IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


MICHAEL L. HAAS ,                            CASE NO. 2:13-cv-0031

               **Petitioner,**               JUDGE PETER C. ECONOMUS

v.                                      Magistrate Judge Kemp

WARDEN, ROSS CORRECTIONAL
INSTITUTION.

               **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  This matter is before the Court on that petition, respondent's return of writ, and the exhibits attached to the return.  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that petitioner's claims be **DISMISSED**.

## I.  PROCEDURAL HISTORY

On December 1, 2008, a Franklin County, Ohio grand jury returned a twenty-five count indictment charging various individuals with crimes such as receiving stolen property, safecracking, breaking and entering, burglary, theft, and possession of drugs. Petitioner was charged in count nine (breaking and entering),  count ten (theft), counts twelve, sixteen, and seventeen (burglary), counts eighteen and nineteen (theft), and count twenty-one (safecracking).    *Return of Writ,* Exhibit Three.

Petitioner pleaded not guilty and was tried by a jury.  On October 14, 2009, the jury convicted him of all eight counts.  In a judgment entry filed on December 17, 2009,

the trial judge sentenced petitioner to an aggregate of twenty years and six months in prison, plus five years of mandatory post-release control.  *Return of Writ*, Exhibit One.

Petitioner timely appealed his conviction to the Court of Appeals for the Tenth Appellate District.  He raised four assignment of error, as follows:

> 1.  THE JUDGMENTS OF CONVICTION ARE CONTRARY TO LAW AND TO THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES IN THAT THERE WAS INSUFFICIENT EVIDENCE ADDUCED TO ESTABLISH EACH AND EVERY ELEMENT OF EACH OFFENSE BEYOND A REASONABLE DOUBT.
>
> 2.  THE JUDGMENT(S) OF CONVICTION ARE CONTRARY TO THE WEIGHT OF THE EVIDENCE.
>
> 3.  APPELLANT'S DUE PROCESS RIGHTS WERE VIOLATED WHEN THE STATE COMMITTED PROSECUTORIAL MISCONDUCT IN VIOLATION OF THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
>
> 4.  THE JUDGMENT OF CONVICTION IS CONTRARY TO LAW AND TO THE SIXTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES IN THAT THE APPELLANT DID NOT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL.
>               .

*Return of Writ*, Exhibit Nine.  In a decision dated June 2, 2011, the Tenth District Court of Appeals overruled his assignments of error and affirmed petitioner's conviction.  *State v. Haas*, 2011 WL 2175023 (Franklin Co. App. June 2, 2011).  Petitioner did not timely appeal that decision to the Ohio Supreme Court, but that court granted his motion to file a delayed appeal.  *State v. Haas*,129 Ohio St. 3d 1473 (2011).   In his delayed appeal, he raised the same four claims he had presented to the appellate court.  *Return of Writ*,

2

Exhibit 15.  On January 18, 2012, the Supreme Court of Ohio declined to accept the case

for review.  *State v. Haas*, 131 Ohio St.3d 1411 (2012).

On January 11, 2013, petitioner timely presented his petition for a writ of habeas

corpus to this Court.  In his petition, he raised the following grounds for relief, stated

here exactly as they appear in the petition:

> **Ground One:** The judgment of conviction are contrary to law and to the
> Due process clause of the fourteenth amendment to the Constitution of the
> United State in that there was insufficient evidence adduced to establish
> each and every element of each offense beyond a reasonable doubt.
>
> **Ground Two:** The judgment of conviction are contrary to the weight of
> the evidence.
>
> **Ground Three:** Appellant's Due process rights were violated when the
> state committed prosecutorial misconduct in violation of the fifth, sixth
> and fourteenth amendments of the United State constitution.
>
> **Ground Four:** The judgment of conviction is contrary to law and to the
> sixth amendment to the constitution of the United State in that the
> appellant did not receive effective assistance of counsel.

It is respondent's position that petitioner's second ground for relief raises a state law

claim which cannot be presented in federal habeas corpus, and that the remaining three

claims lack merit.

## II. FACTS

The facts of the underlying offense are stated in the state court of appeals'

opinion. This is how the state court of appeals described the events which led to the

filing of charges against petitioner:

During the later part of 2007, Franklin County saw an unusually large number of seemingly related burglaries. One occurred at a business named Spinsect, which was located at 1520 Harmon Avenue, Suite 699 in Columbus, Ohio. The burglary was discovered on December 3, 2007 when the business owner, Matt Leukart, arrived for work. Upon his arrival, he discovered that windows and doors had been broken and a crossbow, a number of tools, a generator, and Christmas gifts had been taken. In total, Mr. Leukart estimated his loss was approximately $10,000.

Another set of victims, Gary and Jan Wulf, left their residence located at 4117 Delancy Park Drive in Dublin, Ohio, for a vacation during the days of December 12 through December 15, 2007. When they returned home, they found that their front door had been kicked in and many items had been taken, including: a white Lexus, a plasma television, a pair of binoculars, a camera, two guns, a coin collection, checks, and $2,000 in cash. Their car was recovered days later and had extensive damage.

On December 14, 2007, the residence of Bernard Helmick, located at 3001 Kropp Road in Grove City, Ohio, was the subject of a break-in. On that date, Mr. Helmick was out-of-town, but his niece, Amanda Pennington, was staying at his house. When she arrived home, she noticed a man there. At approximately the same time, Mr. Helmick's ex-brother-in-law, Dale Thum, was driving on Kropp Road. As he drove by Mr. Helmick's residence, he noticed two men walking through a field near the house. He believed this was unusual because nothing besides the house was in the area. He also noticed two vehicles in the driveway; one was a red minivan. Mr. Thum drove by the residence before deciding to turn around and inquire further. Mr. Thum stopped and briefly searched through the house. At that point, the red minivan had just left. It was clear that the front door had been kicked in, and many items had been gathered in the kitchen apparently in preparation to be taken. The items included coins, guns, and a set of night-vision binoculars. He then drove after the red minivan to attempt to retrieve its license plate number. During the ensuing chase, Mr. Thum and the red minivan approached speeds of 100 miles per hour. When the red minivan ran through the stop sign of a busy intersection, Mr. Thum decided it was too dangerous to proceed.

The residence of Robert Talbott, located at 4252 Shire Cove in Hilliard, Ohio, was the subject of a break-in on the night of December 20, 2007. That night, Mr. Talbott left his residence at approximately 5:30 p.m. to attend a Christmas party. When he returned home at approximately 3:00 a.m., he

4

found that his home had been burglarized. He noticed muddy shoeprints on his carpet and severe damage to his staircase. A collection of three or four guns, including commemorative Army pistols and Colt .45s from World War II were taken from a display case. Nearly all of his 25,000 Silver Eagle coins, which were packaged in green cases from the United States Mint and were valued at approximately $16 each, were taken from a closet. A safe was taken from his master bedroom. The safe contained diamonds, watches, silver bars, rare coins, and approximately $180,000 in cash. Mr. Talbott estimated his total loss was approximately $2 million. Some of Mr. Talbott's items were recovered in April 2009 from Kenneth Koon ("Kenny").

Also in late 2007, an ATM was taken from a recreational complex known as "The Barn." After having received a call from an individual who saw an ATM in a dumpster, investigators recovered the ATM and noticed blood on it. They analyzed the blood and linked it to Scott Keaveney ("Scott").

Based upon the blood and other tips, Scott was arrested on December 22, 2007. On that date, he spoke to detectives and described in detail a series of burglaries he had committed with James Richesson ("Jamie"), Aaron Eiland ("Aaron"), Todd Fischer ("Todd"), Mark Mayle ("Mark"), Bruce Manahan ("Bruce"), and appellant. At that point, he turned over a Cartier watch that had been taken from the Shire Cove burglary. Scott also indicated that Kenny purchased most of the stolen goods after the burglaries.

On January 4, 2008, an arrest warrant was issued for appellant with regard to the Spinset property break-in. He voluntarily turned himself in on January 7, 2008 and was released on bond the next day. On January 11, 2008, appellant waived his preliminary hearing and was bound over to the Franklin County Court of Common Pleas for indictment. On February 25, 2008, the Franklin County Grand Jury issued a no bill.

On December 1, 2008, the Franklin County Grand Jury issued a 25 count indictment. Eight counts pertained to appellant. Specifically, Count 9 of the indictment charged appellant with breaking and entering, in violation of R.C. 2911.13 and a felony of the fifth degree, Count 10 of the indictment charged appellant with theft, in violation of R.C. 2913.02 and a felony of the fourth degree, Counts 12, 16, and 17 of the indictment charged appellant with 3 counts of burglary, in violation of R.C. 2911.12 and felonies of the second degree, Count 18 of the indictment charged appellant with theft, in

violation of R.C. 2913.02 and a felony of the first degree, Count 19 of the indictment charged appellant with theft, in violation of R.C. 2913.02 and a felony of the third degree, and Count 21 of the indictment charged appellant with safecracking, in violation of R.C. 2911.31 and a felony of the fourth degree.

*State v. Haas, supra,* at *1-2.

## III. GROUND TWO

Respondent argues that ground two, to the extent that it is a manifest weight of the evidence claim, is not cognizable in federal habeas corpus because that claim arises solely under Ohio law. Petitioner has not filed a traverse and has therefore not responded to this argument.

This Court has consistently held that a claim that a jury's verdict was against the manifest weight of the evidence cannot be considered on its merits in an action for habeas corpus relief filed under 28 U.S.C. §2254. That is because §2254 permits federal courts to grant relief to a state prisoner only if there is a showing that the person is being held in custody in violation of the Constitution or laws of the United States. Neither the Constitution nor the laws of the United States require reversal of a jury's verdict if it is against the manifest weight of the evidence; such a claim is based entirely on Ohio law. As the Court explained in *Norris v. Warden, NCI*, 2010 WL 582623, *9-10 (S.D. Ohio Feb. 11, 2010), *adopted and affirmed* 2010 WL 883847 (S.D. Ohio Mar. 9, 2010),

Petitioner's contention ... that his convictions are against the manifest weight of the evidence fails to present an issue appropriate for federal habeas corpus review. The Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the

6

evidence, but only for those who have been convicted without enough proof to allow a rational trier of fact to find guilt beyond a reasonable doubt. *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir.1983).

[U]nder Ohio law, a claim that a verdict was against the manifest weight of the evidence-as opposed to one based upon insufficient evidence-requires the appellate court to act as a "thirteenth juror" and review the entire record, weight the evidence, and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983); *cf. Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, any claim that petitioner's conviction was against the manifest weight of the evidence cannot be considered by this Court.

Ground Two should therefore be dismissed on this basis.

## IV. GROUNDS ONE, THREE AND FOUR - MERITS REVIEW

Respondent concedes that grounds one, three and four were properly raised before the Ohio courts and timely filed here. Respondent argues, however, that none of the issues raised in those grounds for relief justify granting petitioner a writ of habeas corpus. The Court reviews each of the three remaining claims under the legal standard set out by Congress in 28 U.S.C. §2254(d).

### A. LEGAL STANDARD

The provisions of the Antiterrorism and Effective Death Penalty Act, Pub.L. 104-132, 110 Stat. 1214 (AEDPA) govern the scope of this Court's review. *See Penry v. Johnson*, 532 U.S. 782, 791 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir.2008). AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh*

*v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam ). *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)(footnote omitted) .

When the claims presented in a habeas corpus petition have been presented to and decided by the state courts, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented.  28 U.S.C. §2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding

In applying this statute, the Supreme Court has held that "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). To obtain habeas corpus relief, a petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

8

disagreement." *Bobby v. Dixon*, 132 S.Ct. 26, 27 (2011), *quoting Harrington v. Richter,* 562 U.S. ––––, ––––, 131 S.Ct. 770, 786–87 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S.Ct. at 786 (*quoting Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.*, *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

## B. GROUND ONE - SUFFICIENCY OF THE EVIDENCE

Petitioner's first claim is that the evidence was constitutionally insufficient to support the jury's verdict. A challenge to the sufficiency of the evidence, when made in a habeas corpus petition subject to the AEDPA, must meet an exacting standard. As this Court explained in *Lynch v. Hudson*, 2011 WL 4537890, *81-82 (S.D. Ohio September 28, 2011):

> In *Jackson v. Virginia* [443 U.S. 307 (1979)], the United States Supreme Court held that as a matter of fundamental due process, a criminal conviction cannot stand unless each essential element is proven beyond a reasonable doubt. 443 U.S. at 316. The Supreme Court explained that when reviewing a challenge to the constitutional sufficiency of the evidence supporting a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. The Supreme Court cautioned, with respect to the role of a reviewing court, that "[t]his familiar standard gives full play to the responsibility of the trier of fact

fairly to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Thus, after reviewing the evidence in a light most favorable to the prosecution and respecting the trier of fact's role in determining witnesses' credibility and weighing the evidence, a federal court must grant habeas corpus relief "if it is found that upon the record evidence at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id*. at 324.

It is important to remember when reviewing a sufficiency of the evidence challenge that this Court "do[es] not reweigh the evidence, re-evaluate the credibility of the witnesses, or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir.2009). If the record contains credible, competent evidence enabling a rational jury to find each essential element beyond a reasonable doubt, then Petitioner's challenge to the sufficiency of the evidence fails. *Cf. Matthews v. Abramajtys*, 319 F.3d 780, 788–89 (6th Cir.2003) ("The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim.").

*Further, as the Sixth Circuit has explained, "[i]n a habeas proceeding, however, we cannot simply conduct de novo review of the state court's application of [the *Jackson v. Virginia*] rule, but must review its sufficiency-of-the-evidence decision under the highly deferential standard of the AEDPA." *Saxton v. Sheets*, 547 F.3d 597, 602 (6th Cir.2008). In *Tucker v. Palmer,* 541 F.3d 652 (6th Cir.2008), the Sixth Circuit explained in more detail:

> Accordingly, the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by Jackson; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by the AEDPA.

*Id*. at 656. *See also Parker v. Renico*, 506 F.3d 444, 448 (6th Cir.2007); *Nash v. Eberlin,* 258 F. App'x 761, 765 (6th Cir.2007). This Court recognizes, however, that "even after AEDPA, [the Court] must 'distinguish reasonable speculation from sufficient evidence' when reviewing a state court's application of *Jackson*." *Smith v. Romanowski*, No. 07–1578, 2009 WL 1884451, at *6 (6th Cir. Jul.1, 2009) (Moore, J., dissenting) (quoting *Brown v. Palmer*, 441 F.3d 367, 352 (6th Cir.2006)).

The state court of appeals addressed this claim on its merits. In doing so, it did not specifically summarize the testimony given at trial, but rather noted and rejected specific arguments made by petitioner, concluding that they all went to the credibility of the witnesses and not to the sufficiency of the evidence given by those witnesses. The state court did, however, summarize the evidence as part of its discussion of petitioner's manifest weight of the evidence claim, describing the trial testimony this way:

> The evidence demonstrated that none of the subjects who committed the crimes were apprehended on the premises. However, the break-ins and burglaries clearly occurred. The record further reflects that appellant was not arrested immediately after any of the burglaries. He had ample time to rid himself of any incriminating evidence. Appellant's arguments in this regard are unpersuasive. Finally, we address appellant's credibility challenges.
>
> During the trial, the state offered testimony from property owners, patrol officers, evidence technicians, detectives, and fingerprint examiners about the details of each crime scene, what property was taken from each, and the evidence obtained from each. The state also offered testimony from Jamie and Scott [James Richesson and Scott Keaveney, two of the others involved in the string of burglaries] about what happened during each of the four crimes at issue herein. The state also offered the testimony of Mr. Thum, who had witnessed some of the events related to the Kropp Road burglary.
>
> The testimony showed that Jamie and Scott were involved in a series of 20 or more burglaries in late 2007. According to their testimony, different groups of men were involved in different jobs. With regard to this case, they testified about appellant's specific involvement in four of these jobs.
>
> With respect to the Spinsect property, the testimony showed that Todd [Todd Fischer, another involved party], Jamie, and appellant were riding around in Jamie's red minivan and came upon Spinsect. They broke a window at the business and then left. They retrieved appellant's car and

came back to the Spinsect property. After noticing that no police responded to the broken window, they broke down the door and took tools, a bin of Christmas presents, and a crossbow. They took the items to Mark's [Mark Mayle's] house and sold them to Kenny [Kenneth Koon].

With respect to the Kropp Road property, the testimony showed that Scott, Jamie, and appellant were again riding around in Jamie's red minivan. Jamie parked the minivan in the driveway before he and Scott kicked in the door. Appellant joined Jamie and Scott inside and began gathering items to take. At that time, a woman pulled into the driveway. Appellant and Scott fled through the back of the house and ran through a field. Jamie began to flee, but then realized his minivan was still in the driveway. He then went back and spoke with the woman. He told her that he was driving by the house when he noticed two men burglarizing it, so he stopped to check things out. He then told her that he would chase the men down in his minivan. At that point, Jamie drove off and stopped to pick up Scott and appellant. A black Dodge truck then began chasing them. During the chase, the vehicles were driving at speeds in excess of 100 miles per hour. Jamie drove through stop signs and ignored other traffic signals. The only item taken from the Kropp Road property was a blue lockbox with around $50 in it. Based upon that which Mr. Thum perceived, his testimony corroborated this recitation of the events.

With respect to the Delancy Park property, Scott and Jamie had noticed packages on the front porch of the condo. The next night, Scott, Jamie and appellant returned, and the packages were still there. Jamie broke down the door with his shoulder, and the three men went inside. Scott found a couple thousand dollars in cash, and appellant found two lockbox-type safes. The men took those items and left. Jamie and Todd then returned and took a few guns, a television, and a white Lexus.

With respect to the Shire Cove property, Scott had previously been inside the house while performing work on it. As a result, he knew that there was a Ferrari on display in the living room. The testimony showed that Scott and Jamie drove by the house at around noon on December 20, 2007, at which point Scott showed Jamie the Ferrari. Scott, Jamie, Bruce [Bruce Manahan] and Todd drove by the house a second time at around 4:00 p.m. The same four men returned at around 7:30 p.m. and noticed that a sliding glass door in the back of the house was open. They then left to go to Meijer to buy ski masks and gloves. Upon their return, they went inside and broke into a closet where they found green cases with coins in them. They took around 12 of the green cases and went to Mark's house, where

12

they called Kenny. Shortly thereafter, Kenny and appellant arrived, and Kenny paid $10,000 for the green cases of coins. He also informed the men that he would purchase more of the cases if they went back to retrieve them.

Scott then took appellant to get his car, and those two men returned to the Shire Cove property. Jamie and Todd also returned to the property in Jamie's minivan. Upon their return, Jamie, Todd, Scott and appellant retrieved more of the green cases. They also found a few guns and took those. They then found a safe in another bedroom and spent approximately two hours getting it into the minivan. They returned to Kenny's garage and spent approximately an hour and one-half trying to open the safe with sledgehammers, grinders, and crowbars. When they finally opened it, appellant, Scott, Todd, and Jamie all emptied the contents of the safe into buckets. Scott and Aaron then took the emptied safe and dumped it on the side of the road in a wooded area.

Upon receiving a tip, the safe was recovered a few days later. Investigators found and retrieved a fingerprint from the recovered safe. Analysis of the fingerprint indicated that it belonged to appellant.

*State v. Haas, supra,* at *5-6.

This Court's independent review of the trial transcript, Doc. 9, confirms that this is generally an accurate summary of the evidence. For example, on direct examination Scott Keaveney testified about the Spinsect burglary, stating that appellant participated by "gather[ing] up tools with Jamie and Todd and me." (Tr. 395). Appellant received a share of the proceeds from that burglary as well. (Tr. 397). Scott also testified that appellant went into the Kropp Road property and helped locate and collect items to steal. (Tr. 399). Only $50.00 was actually taken, but, again, appellant received a share. (Tr. 403). As to the Delancy Park residence, Scott identified appellant as one of the men who went inside and found two lockboxes which they stole. (Tr. 406). Finally, he told

the jury that after he and others took the first coin cases from the Talbott house, they met with Kenneth Koon and appellant and Koon agreed to buy those coins and any others they could get. Scott then took appellant to get his car and they went back to the Talbott house, where they proceeded to steal other coins and the safe. (Tr. 420). Appellant helped put the safe into Jamie's van (Tr. 427) and participated in the efforts to get it open. (Tr. 432). He also took money from the safe. (Tr. 433). Jamie Richeson corroborated significant portions of this testimony. (Tr. 477-520).

The question raised by the petition is whether, given this evidence, the state courts unreasonably determined that there was enough evidence to permit a jury to find, beyond a reasonable doubt, that petitioner committed the crimes which the jury convicted him of. This Court finds that the state court's decision on the sufficiency of the evidence question is not unreasonable, and is, in fact, a proper application of federal law to the facts of this case.

The state court of appeals did not cite to any federal court decisions when it analyzed petitioner's sufficiency of the evidence claim. It did, however, rely on several Ohio decisions, including *State v. Thompkins*, 78 Ohio St.3d 380 (1997). *Thompkins*, in turn, cited to both *Tibbs v. Florida* and *Jackson v. Virginia* for the proposition that "a conviction based on legally insufficient evidence constitutes a denial of due process." *State v. Thompkins*, *supra*, at 386-87. Thus, the state court of appeals identified the controlling legal principle as set out by the United States Supreme Court.

Did it apply that principle properly? The answer is clearly yes. The testimony of

14

the other participants in the burglaries for which petitioner was convicted identified him as one of the people who entered the various residences or places of business and committed theft offenses while there. A reasonable juror could have concluded, based on that testimony, that petitioner was guilty. Although there was also one of his fingerprints on the safe, which is corroborating physical evidence, in fact no additional corroboration of their testimony was needed in order to satisfy the constitutional minimum; "[t]he fact that no physical evidence linked [the defendant] to the scene is not dispositive of whether [he] was at the scene." *Hilliard v. Hudson*, 599 F.Supp.2d 921, 932 (N.D. Ohio 2009); *see also Hawkins v. Coyle*, 2004 WL 5708285, *59 (S.D. Ohio March 22, 2004), *adopted and affirmed* 2005 WL 1684022 (S.D. Ohio July 19, 2005), *aff'd in part and rev'd in part* 547 F.3d 540 (6th Cir. 2008)("even the testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a conviction ..."), *citing Brown v. Davis*, 752 F.2d 1142 (6th Cir. 1985).

*Brown v. Davis* is particularly instructive. There, as the Court of Appeals noted, the defendant had been convicted of rape almost exclusively on the testimony of one eyewitness, whose credibility was substantially undercut by the fact that she knew the person she eventually named as her attacker but she did not provide his name to police when first questioned and that she had given another name to police before ultimately identifying the defendant as her assailant. Also, as the Court noted, "it may seem foolhardy and irrational for an undisguised man who is well known by the victim to attack her in a lighted room ...." *Id*. at 1147. The Court also noted the studies showing that

15

eyewitness identifications can be unreliable and stated that it was "painfully aware of miscarriages of justice caused by wrongful identification." *Id*. at 1146. Nevertheless, because the only question before the Court was the constitutional sufficiency of the evidence, and because the jury could rationally have believed the victim's testimony, the Court denied relief, stating that "[t]he defense had every opportunity to cross-examine and impeach the victim's credibility. The issue of credibility, the demeanor of the parties, and the weighing of the evidence were properly for the jury." *Id*. at 1147. Because that question - and not "whether [the reviewing court] believes the evidence at the state trial established guilt beyond a reasonable doubt" - is the crux of the sufficiency of the evidence inquiry, the petitioner's claim was foreclosed. *Id*.

The same is true here. The challenges which petitioner raised in his state court appeal all went to the credibility of the witnesses against him, and not to the substance of their testimony. As the court of appeals observed,

> Appellant presents three arguments in support of his sufficiency of the evidence challenge. First, he argues that one witness, Jamie, admitted that he lied to detectives during their investigation of the burglaries. Consequently, appellant contends that Jamie's trial testimony should not have been believed. Second, appellant argues that the state's case relied on the trial testimony of Jamie and Scott. Appellant notes that he had a highly contentious relationship with these individuals, who apparently had previously tried to kill him. As a result, appellant contends that these individuals' trial testimony should not have been believed because they had a motive to lie. Lastly, appellant notes that Jamie had made a deal with the state to have him transferred to another prison if he testified during appellant's trial. Accordingly, appellant contends that his testimony should not have been believed for this additional reason.

> It is clear that all of appellant's arguments in support of his first assignment of error challenge the credibility of the testimony offered during the trial.

16

> However, because courts do not evaluate witness credibility when reviewing a sufficiency of the evidence challenge, we reject appellant's arguments in this regard. *See [State v.] Jenks* [61 Ohio St. 3d 259 (1991)] at syllabus; *Thompkins* at 390; and *[State v.] Yarbrough* [95 Ohio St. 3d 227 (2002)] at ¶ 79. Appellant's convictions are supported by sufficient evidence.

*State v. Haas,* 2011 WL 2175023, *3. The principles cited by the state court - that, in the context of a sufficiency of the evidence challenge, the court cannot evaluate the credibility of the witnesses because that is the jury's function - is a principle well-established in federal case law as well. *See, e.g., United States v. Welch*, 97 F.3d 142, 148 (6th Cir. 1996) (when conducting a sufficiency of the evidence review, a court must "refrain from independently judging the credibility of witnesses or weight of the evidence"), *citing, inter alia, Jackson v. Virginia, supra*. Petitioner's first ground for relief is therefore without merit.

### C. GROUND THREE - PROSECUTORIAL MISCONDUCT

Petitioner does not make any specific argument in his petition about this claim. The Court therefore assumes it is the same claim he presented to the state court of appeals. As reflected in the appellate brief he filed (*Return of Writ*, Exhibit 9), petitioner claimed that the county prosecutors committed misconduct when they visited witness Jamie Richesson the day before the trial and threatened him with an extremely long prison term (100 years) if he did not testify. As part of the background of this issue, Mr. Richesson had signed a plea agreement obligating him to testify when asked, but shortly before petitioner's trial he expressed some unwillingness to testify. Prosecutors met with him and explained that if he breached the plea agreement, they could prosecute him for a whole host of offenses and that he could conceivably be sentenced

17

to 100 years in prison.  As petitioner phrased his argument, "One does not expect to see the prosecutor threaten a witness with 100 years in prison and believe there is any truth to testimony given by a witness who is under duress.  Clearly the prosecutor's (sic) in this case lost their way and violated the Appellant's due process rights." *Id*. at 13. Petitioner also argued that the friendship between Franklin County Prosecutor Ron O'Brien and one of the victims created an impermissible conflict of interest. *Id*.

The state court of appeals analyzed this issue in the following manner:

Appellant presents two arguments in support of his third assignment of error. First, he argues that Jamie was coerced into testifying. Second, he notes that one of the victims in this matter knew one of the prosecutors representing the state.

The record clearly demonstrates that Jamie entered a plea agreement, under which he agreed to testify truthfully for the prosecution. The day before Jamie was set to testify, however, he began having second thoughts about testifying. His reluctance was based upon threats he had apparently received from prison inmates. One inmate told him that a price was on his head, while another told him that his house would be burned down with his children inside of it. When Jamie informed prosecutors of his apprehension, prosecutors visited him several times to explain what would happen if he chose not to testify. Jamie was given the choice: he could testify truthfully and uphold his side of his plea agreement, or he could face prosecution for all of the crimes he committed.

We note that Jamie's testimony merely corroborated Scott's. Nothing in the record suggests that his testimony was anything but truthful. In any event, the jury was informed about Jamie's apprehension in testifying and could assess his credibility in light of that information. *See State v. Sanders,* 92 Ohio St.3d 245, 271, 2001–Ohio–189. The reason Jamie ultimately chose to testify did not affect the fairness of appellant's trial. Accordingly, there was no violation of appellant's due process rights. *Id*., citing *Overton v. United States* (C.A.5, 1971), 450 F.2d 919, 920.

The record also demonstrates that the victim of the Shire Cove burglary knew one of the prosecutors in this matter. Appellant argues that certain

> favors were granted to this victim in exchange for his testimony. However, the record is completely devoid of anything supporting such an argument. The victim's testimony had no relation to appellant, but, instead, merely regarded his residence and what items were missing following the burglary. Based upon the record before us, in no way was appellant deprived of his right to a fair trial because a victim knew a prosecutor. As a result, we find no prosecutorial misconduct in the instant matter.

*State v. Haas, supra,* at *7-8.

Taking these claims in reverse order, the state court of appeals did not articulate any legal standard governing the assertion that Prosecutor O'Brien's refusal to withdraw from the case despite his friendship with one of the victims constituted misconduct other than the statement that petitioner was not deprived of his right to a fair trial, nor did it cite any case law. However, its decision was still a reasonable one.

Prosecutorial conduct which results in a fundamentally unfair trial can violate a defendant's due process rights. *Darden v. Wainwright*, 477 U.S. 168, 193 (1986). When considering such a claim, "the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001). Even comments made during closing argument about a friendship between the prosecutor trying the case and the victim are not necessarily prejudicial; as long as the prosecutor "conveyed no substantive, personal information" and "focused the jury's attention on the admitted evidence" there is no error. *Resnover v. Pearson*, 965 F.2d 1453, 1465 (7th Cir. 1992).

Here, petitioner did not point out to the state court, and does not point out here, how the friendship between Prosecutor O'Brien and the victim affected the outcome of the case. The jury was never asked to consider this friendship in any way in its evaluation of the evidence. Further, the victim merely testified about the break-in at his home, which no one disputed, and the items which were taken. He was unable to identify petitioner (or anyone else, for that matter) as one of the burglars. Given the overwhelming evidence of guilt, established primarily through the testimony of Jamie Richesson and Scott Keaveney, in the context of the entire trial the acknowledged friendship between Prosecutor O'Brien and the victim had no impact on the fairness of the trial.

Petitioner's other contention is slightly more substantial. It is true that, in an egregious case, a prosecutor may violate due process by leveling threats against a witness. *See, e.g., United States v. Heller*, 830 F.2d 150, 154 (11th Cir. 1987). In that case, an IRS agent's intentional conduct designed to "scare" a witness into changing his testimony in way unfavorable to the defendant was held to be grounds for reversal because the defendant was "deprived of an important defense witness by substantial interference on the part of the government." Usually, it is threats by the government to prevent a defense witness from testifying that deprive a defendant of a fair trial, and not threats by the government to a government witness. In the latter case, there must be some showing that the threats led the witness to testify falsely. Where a witness, despite being threatened with consequences such as being prosecuted or removed from

a drug treatment program, appears voluntarily (that is, making a choice between the testifying and facing the consequences of failing to testify - exactly what Jamie Richesson said he did in this case) no due process violation occurs. *Garcia v. Alameida*, 189 Fed. Appx. 649, 650 (9th Cir. June 19, 2006). This is especially true where there is no indication that the pressure on the witness led to any false testimony - and here, as the state court noted, all of Jamie Richesson's testimony was essentially corroborated by Scott Keaveney's evidence - and where defense counsel was able to bring out all the circumstances surrounding the prosecutors' conduct. As another court has observed, "the safeguards of defense cross-examination and argument prevented the prosecutor's tactics from rendering the trial fundamentally unfair." *Nichols v. Garcia*, 1999 WL 459362, *9 (N.D. Cal. June 28, 1999). For all of these reasons, the state court did not unreasonably decide this issue against petitioner.

### D.  GROUND FOUR - INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner's final claim is that he received ineffective assistance of counsel. As argued in his appellate brief, the gist of this claim is that counsel did not request oral argument or otherwise effectively support a motion to dismiss counts nine and ten of the indictment; that he did not request removal of a juror who expressed fear for her safety; that he did not file a motion to dismiss counts nine and ten on speedy trial grounds; and that he did not move to suppress statements made by Scott Keaveney to the police on grounds that Mr. Keaveney was under the influence of drugs at the time he made the statements.

Again, because this Court's task is to determine if the state court's decision on these issues constituted an unreasonable application of clearly established federal law, the analysis begins with the state appellate court's treatment of this claim.  That court said:

> By way of his fourth assignment of error, appellant argues that he received ineffective assistance of counsel. Again, we disagree.
>
> In Ohio, a properly licensed attorney is presumed competent. *Vaughn v. Maxwell* (1965), 2 Ohio St.2d 299, 301. Therefore, the burden of showing ineffective assistance of counsel is on the party asserting it. *State v. Smith* (1985), 17 Ohio St.3d 98, 100. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie* (1998), 81 Ohio St.3d 673, 675. Additionally, in fairly assessing counsel's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Conway*, 109 Ohio St.3d 412, 2006–Ohio–2815, ¶ 101.
>
> Trial strategy and even debatable trial tactics do not establish ineffective assistance of counsel. *Id*. A reviewing court must be "highly deferential to counsel's performance and will not second-guess trial strategy decisions." *State v. Tibbetts*, 92 Ohio St.3d 146, 166–67, 2001–Ohio–132. Strategic choices made after substantial investigation "will seldom if ever" be found wanting. *Strickland v. Washington* (1984), 466 U.S. 686, 681, 104 S.Ct. 2052, 2061. "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment." *Id*.
>
> "[T]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. at 2064. In order to succeed on a claim of ineffective assistance of counsel, appellant must satisfy a two-prong test. First, he must demonstrate that his trial counsel's performance was deficient. *Id*. at 687, 104 S.Ct. at 2064. This requires a showing that his counsel committed errors which were "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth

22

Amendment." *Id*. If he can show deficient performance, he must next demonstrate that he was prejudiced by the deficient performance. *Id*. To show prejudice, he must establish there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the trial would have been different. A reasonable probability is one sufficient to erode confidence in the outcome. *Id*. at 694, 104 S.Ct. at 2068.

In this appeal, appellant notes that his trial counsel filed a motion to dismiss Counts 9 and 10 of the indictment in the trial court based upon purported speedy trial violations. However, according to appellant, his trial counsel should have requested oral argument on the issue. Instead of doing so, counsel merely asserted an objection for the record when his written motion was denied.

This is precisely the type of trial strategy that we may not second-guess when presented with a claim of ineffectiveness. Indeed, based upon the record, trial counsel specifically set forth appellant's arguments by filing a written motion. He also raised the issue on the record before the trial commenced. When the trial judge denied appellant's motion, counsel noted an objection for purposes of appeal. In this appeal, appellant does not challenge the substance of the ruling on the issue but, instead, only argues that counsel should have done more in presenting it to the court. We disagree because appellant's trial counsel employed a trial strategy based upon his professional judgment. Appellant did not receive ineffective assistance of counsel in this regard.

Appellant next argues that his trial counsel should have filed a motion to suppress statements made by Scott during the investigation. He contends that Scott was under the influence of cocaine when he gave statements to investigators. However, the record indicates otherwise. Indeed, although Scott testified that he had used cocaine early in the morning on December 22, 2007, he also testified that he was not interviewed until approximately 3:20 p.m. Investigators testified that he was alert, coherent, and responsive to questioning. The testimony also undisputedly showed that he did not appear to be under the influence of any drugs at the time of the investigation.

"When claiming ineffective assistance due to failure to file or pursue a motion to suppress, an appellant must point to evidence in the record showing there was a reasonable probability the result of trial would have differed if the motion had been filed or pursued." *State v. Gaines*, 11th Dist. No.2006–L–059, 2007–Ohio–1375, ¶ 17, citing *State v. Clark*, 11th Dist.

No.2002–A–0056, 2003–Ohio–6689, ¶ 28. Moreover, the failure to file a motion to suppress constitutes ineffective assistance of counsel only if, based upon the record, the motion would have been granted. *State v. Robinson* (1996), 108 Ohio App.3d 428, 433; *see also State v. Adams*, 103 Ohio St.3d 508, 2004–Ohio–5845, ¶ 29–32 (failure to file motion to suppress pretrial statements constitutes "tactical judgment" and not ineffective assistance of counsel). The failure to file a futile motion to suppress does not amount to ineffective assistance of counsel. See *Robinson* at 433.

Appellant has failed to point to any evidence demonstrating that the trial would have yielded different results had a motion to suppress been filed. Instead, appellant merely makes the conclusory statement that Scott was under the influence of drugs at the time he provided statements. *See State v. Woodard*, 11th Dist. No.2009–A0047, 2010–Ohio–2949, ¶ 15. Accordingly, based upon the record before us, appellant did not receive ineffective assistance of counsel based upon the failure to file a motion to suppress.

Appellant's final argument in support of his ineffectiveness claim is that counsel should have dismissed a juror when she expressed concern over her own safety. According to the record, in the middle of trial, one juror left a voicemail with the court expressing concern over the fact that her place of employment was discussed during voir dire. The trial judge conducted a conference with counsel outside the presence of all jurors and then inquired further of the juror as to whether she could deliberate fairly and freely despite her concerns. Upon further inquiry, the juror indicated that she no longer had such concerns and could discharge her duties as a juror. Neither side raised any objection to her continued service as a member of the jury.

Again, it was a tactical decision based upon professional judgment as to whether trial counsel should have objected to the juror's continued involvement in the case. We must not second-guess such trial tactics and instead must defer to counsel's professional judgment when presented with an ineffective assistance claim. Appellant did not receive ineffective assistance in this regard.

*State v. Haas, supra*, at *8-10.

As the state court recognized, the controlling principles of law are set forth in

*Strickland v. Washington*, 466 U.S. 668 (1984). The state court also explained *Strickland's*

24

two-pronged test correctly, noting that in order to demonstrate ineffective assistance of counsel, a petitioner must show both deficient performance of his or her attorney and prejudice from that performance, *i.e.* a reasonable probability that, but for counsel's errors, the outcome of the trial would have been different.  Thus, the only question is whether the state court unreasonably applied these principles to the facts of this case.

The state court made several factual findings relating to this claim which are binding on this Court.  *See Bowling v. Parker*, 344 F.3d 487, 497 (6th Cir. 2003)(under 28 U.S.C. §2254(e)(1), "[t]he presumption of correctness also attaches to the factual findings of a state appellate court based on the state trial record").  Those include the findings that the juror in question, after raising her concerns, stated that she had overcome her fear and could continue to serve as a juror, and that Scott Keaveney was not actually under the influence of his early morning cocaine use when police questioned him in the middle of the afternoon.  Given these findings, there is no reasonable chance that had counsel either asked to have the juror dismissed or asked to have Scott's testimony about his statements to the police suppressed, those requests would have been granted.  This Court also finds that the state court's conclusion that counsel did not act unreasonably by choosing to put his speedy trial arguments in writing rather than by asking for oral argument to be a fair conclusion; petitioner never demonstrated (and likely could not demonstrate) that the trial judge's ruling was affected by the absence of oral argument on the motion.  Further, petitioner never pressed the claim, either in state court or here, that the speedy trial motion was wrongly decided, or that it was wrongly

25

decided due to some failure on the part of counsel. For all of these reasons, the Court concludes that petitioner's fourth claim lacks merit.

## V. RECOMMENDED DISPOSITION

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that the petition for a writ of habeas corpus be **DISMISSED**.

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

/s/ Terence P. Kemp
United States Magistrate Judge